UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL DAVERN,<br><br>        Plaintiff,<br><br>vs.<br><br>MICHAEL J. ASTRUE,<br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>        Defendant. | No. 4:11-CV-00961<br><br>(Judge Kosik) |

FILED
SCRANTON
SEP 7 2012
PER _____
DEPUTY CLERK

## MEMORANDUM

### BACKGROUND

The above-captioned action is one seeking review of a decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Michael Davern's claim for social security disability insurance benefits.

Under 42 U.S.C. § 405(g) and relevant case law, the court is limited to reviewing the administrative record to determine whether the decision of the Commissioner is supported by substantial evidence. Counsel for the parties are familiar with the five-step sequential evaluation process[1] that the Commissioner utilizes and the substantial evidence standard of review.[2]

---

1. The Commissioner utilizes a five-step process in evaluating disability insurance benefits claims. See 20 C.F.R. § 404.1520; Poulos v. Commissioner of Social Security, 474 F.3d 88, 91-92 (3d Cir. 2007). This process requires the Commissioner to consider, in sequence, whether a claimant (1) is engaging in substantial gainful activity, (2) has an impairment that is severe or a combination of impairments that is severe, (3) has an impairment or combination of impairments that meets or equals the requirements of a listed impairment, (4) has the residual functional capacity to return to his or her past work and (5) if not, whether he or she can perform other work in the national economy. Id. At step five of the sequential evaluation process, the burden of production temporarily shifts to the Commissioner to produce vocational evidence demonstrating that there are a significant number of jobs in the national economy that the claimant, given his or her residual functional capacity, can perform. Once the Commissioner satisfies this limited burden of production, the burden shifts back to the claimant to prove that the Commissioner cannot rely on the vocational evidence.

2. Substantial evidence "does not mean a large or considerable amount of evidence, but 'rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Pierce v. Underwood, 487 U.S. 552, 565 (1988)(quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)); Johnson v. Commissioner of Social Security, 529 F.3d 198, 200 (3d Cir. 2008); Hartranft v. Apfel,

Davern protectively filed[3] his application for disability insurance benefits on June 2, 2008. Tr. 58 and 128.[4] Davern claims that he is disabled because of high blood pressure, gout and disorders of the back and neck which cause severe pain. Tr. 132. Davern's application was initially denied by the Bureau of Disability Determination on September 10, 2008.[5] Tr. 58. On October 2, 2008, Davern requested a hearing before an administrative law judge. Tr. 61-62. After over 21 months had elapsed, a hearing was held before an administrative law judge on July 20, 2010. Tr. 22-57. A vocational expert did not testify at the administrative hearing.

On July 30, 2010, the administrative law judge issued a decision denying Davern's application. Tr. 11-17. The administrative law judge found that Davern was a "younger individual"[6] and had past relevant work experience as a truck driver, which Davern characterized as light work from an exertional standpoint. Tr. 16. The

---

181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence has been described as more than a mere scintilla of evidence but less than a preponderance. Brown, 845 F.2d at 1213. In an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo v. Federal Maritime Commission, 383 U.S. 607, 620 (1966).

3. Protective filing is a term for the first time an individual contacts the Social Security Administration to file a claim for benefits. A protective filing date allows an individual to have an earlier application date than the date the application is actually signed.

4. References to "Tr.__" are to pages of the administrative record filed by the Defendant as part of his Answer on July 22, 2011.

5. The Bureau of Disability Determination is an agency of the state which initially evaluates applications for disability insurance benefits on behalf of the Social Security Administration. Tr. 15.

6. At the time of the administrative hearing, Davern was 48 years of age. Tr. 28. The Social Security regulations state that "[t]he term younger individual is used to denote an individual 18 through 49." 20 C.F.R., Part 404, Subpart P, Appendix 2, § 201(h)(1). A "younger individual" is considered a person whose age would not seriously impact his or her ability to adjust to other work. 20 C.F.R. § 404.1563(c).

administrative law judge accepted that characterization.[7] Id.

It was undisputed that Davern had the equivalent of high school education. The record reveals that Davern obtained a General Equivalency Diploma in 1980. Tr. 137. The administrative law judge concluded that transferability of job skills was immaterial and that Davern could not perform his past relevant light work as a truck driver because of severe degenerative disc disease of the spine but that Davern still had the ability to perform the full-range of sedentary work.[8] Based on those findings,

---

7. The terms sedentary and light work are defined in the regulations of the Social Security Administration as follows:

> (a) *Sedentary work.* Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.
>
> (b) *Light work.* Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567.

8. For an individual to be found to have the ability to perform the full-range of sedentary work that individual must be able to meet the strength demands of sedentary work (with respect to sitting, standing, walking, lifting, carrying, pushing and pulling) and have no non-exertional limitations. 20 C.F.R. § 404.1569a. Non-exertional limitations are the abilities to meet the demands of jobs other than the strength demands. Id. These non-exertional limitations include difficulty performing postural functions such as stooping, climbing, crawling, crouching and reaching. Id. They also include environment limitations such as the need to avoid exposure to fumes, odors, dusts, gases, poor ventilation and hazards such as machinery and heights. Id.

the administrative law judge utilizing the GRID regulations[9] (specifically Rule 201.21) found that Davern was not disabled. On September 2, 2010, Davern filed a request for review with the Appeals Council and on April 18, 2011, the Appeals Council concluded that there was no basis upon which to grant Davern's request for review. Tr. 1-5 and 7. Thus, the administrative law judge's decision stood as the final decision of the Commissioner.

Davern then filed a complaint in this court on May 18, 2011. Supporting and opposing briefs were submitted and the appeal[10] became ripe for disposition on November 18, 2011, when Davern elected not to file a reply brief.

For the reasons set forth below, we will vacate the decision of the Commissioner denying Davern's application for disability insurance benefits and remand for further proceedings. We will set forth a brief discussion of the basis for the remand.

## DISCUSSION

Disability insurance benefits are paid to an individual if that individual is disabled and "insured," that is, the individual has worked long enough and paid social security taxes. The last date that a claimant meets the requirements of being insured is commonly referred to as the "date last insured." It is undisputed that Davern met

---

9. Contained within the Social Security regulations are grids or tables which list Rules 201.01 through 201.29 (for sedentary work), 202.01 through 202.22 (for light work) and 203.01 through 203.31 (for medium work) in the left hand column. These grids or tables are found at 20 C.F.R., Pt. 404, Subpt. P, App. 2. The Social Security regulations provide that "where the findings of fact made with respect to a particular individual's vocational factors and residual functional capacity coincide with all of the criteria of a particular rule, the rule directs a conclusion as to whether the individual is or is not disabled." Rule 200.00. In the right hand column of the grid or table is set forth the "Decision" as to whether a claimant is "disabled" or "not disabled."

10. Under the Local Rules of Court "[a] civil action brought to review a decision of the Social Security Administration denying a claim for social security disability benefits" is "adjudicated as an appeal." M.D.Pa. Local Rule 83.40.1.

the insured status requirements of the Social Security Act through December 31, 2009. Tr. 128 and 151.

Davern makes the following two arguments: (1) the administrative law judge failed to properly evaluate the medical evidence of record as required by the regulations, social security rulings and controlling case law and (2) the administrative law judge failed to identify and evaluate all of his impairments when determining the residual functional capacity. Because we find merit in Davern's second argument, we need not address the first.

The administrative law judge as stated above concluded that Davern could perform the full-range of sedentary work and utilizing Medical-Vocational Rule 201.21 found that Davern was not disabled. The administrative law judge could only make such a finding if Davern had no non-exertional impairments.[11] The regulations of the Social Security Administration provide that

> [w]hen the limitations and restrictions imposed by your impairment(s) and related symptoms, such as pain, affect your ability to meet both the strength and demands of jobs other than the strength demands, we consider that you have a combination of exertional and nonexertional limitations or restrictions. If your impairment(s) and related symptoms, such as pain, affect your ability to meet both the strength and demands of jobs other than strength demands, we will not directly apply the rules in appendix 2[.]"

20 C.F.R. §404.1569a(d).

The administrative law judge did not address medical evidence indicating that Davern had non-exertional impairments. Leo P. Potera, M.D., the state agency physician who reviewed Davern's medical records, opined that Davern had several non-exertional impairments. Specifically, Dr. Potera found that Davern had limitations in his ability to climb ramps, stairs, ladders, ropes and scaffolds; balance;

---

11. See fn. 8, *supra*.

stoop; kneel; crouch and crawl. Tr. 340. Dr. Potera indicated that Davern could only engage in these activities on an occasional basis. Id. Dr. Potera further found that Davern had to avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, and hazards such as machinery and heights. Id. The administrative law judge did not consider this evidence. This evidence, if accepted, would have prevented the administrative law judge from concluding that Davern could perform the full-range of sedentary work, as well as utilizing Medical-Vocational Rule 201.21 to conclude that Davern was "Not Disabled."

In addition to the opinion of Dr. Potera, the medical evidence strongly suggests that Davern had limitations at least with respect to stooping and bending. We will briefly review some of that evidence.

One of Davern's treating physicians was Warren S. Dewitt, M.D. On May 18, 2004, Dr. DeWitt wrote a letter which states, in pertinent part, as follows: "I continue to treat Mr. Davern for ongoing back problems resulting from his work related injuries of November 2002 and July 14, 2003. As you are aware Mr. Davern suffers from severe lumbosacral sprain syndrome with lumbar radiculopathy, lumbar disc herniation at L4-5; spondylolysis on L5 on the right side." Tr. 237.

On October 20, 2004, Davern was evaluated by Saeed A. Bajwa, M.D., a neurosurgeon. Tr. 229-231. Dr. Bajwa found that Davern's range of motion in the lumbosacral spine was restricted "in lateral rotation and lateral bending on the left side." Tr. 230. On December 6, 2004, Dr. Bajwa again found that Davern's "[r]ange of movement of the lumbosacral spine is restricted in lateral rotation and lateral bending on the left." Tr. 227. He further concluded that Davern suffered from "[l]eft L5 radiculopathy, secondary to bulging disc at left L5-S1, along with pars defect of L5 with Grade 1 spondylolisthesis of L5/S1." Id.

The record does not reveal significant treatment for back problems in the year

2005. However, in March, 2006, Davern had major back surgery. A treatment record authored by Laurence U. Schenk, M.D., a month prior to that surgery stated in pertinent part as follows: "Patient has been followed for longstanding back problems. He has had multiple workups from multiple different physicians. His striking findings now are degenerative L4-5 disc, spondylolysis at L5 without any significant slip. He has responded to pars injections in the past for short periods of time. . . He reached the end of his rope and comes in now requesting surgery. . . I think it would be huge mistake to fuse 4-5 and leave an area of a spondylolysis below that. I have, therefore, recommended that we would do a four to the sacral fusion with PLIF's at both levels." Tr. 299.

On March 6, 2006, Davern was admitted to the United Health Services Hospital, Binghamton, New York, and had the following procedures performed: "Spinal decompression L4, L5, and S1; complete facetectomy of L4-5, L5-S1 on the left; foraminotomy and decompression, nerve roots of L4, L5, and S1 on the left; pedicle screw fixation L4, L5, and S1 bilaterally; posterior interbody fusion with cage, L4-5 and L5-S1; diskectomy, L4-5 and L5-S1; bone marrow grafting from the right ilium and bilateral lateral fusion with autogenous bone grafting and allograft and bone marrow graft, L4, L5, and S1." Tr. 197. Davern was discharged from the hospital on March 10, 2006. Id. A treatment note dated March 17, 2006, reveals a "satisfactory postoperative course." Tr. 295.

In December, 2006, Dr. Schenk observed that "[r]adiographically he is doing quite well. Unfortunately, clinically he is only doing fair." Tr. 286. A physical examination revealed decreased range of motion. Id.

In June, 2008, Dr. Schenk reported that "[h]e is still moderately stiff. Motion of the cervical spine is limited." Tr. 278.

In July, 2008, Davern was evaluated by Paul E. Buckthal, M.D. Tr. 327-328.

Dr. Buckthal reported that "[f]orward bending is limited by his previous lumbar surgery." Tr. 328.

In August, 2008, Shashank Bhatt, M.D., a state agency physician, found that lumbar flexion-extension (forward bending) was decreased more than 50 percent (from a normal range of 0 degrees to 90 degrees to a range of 0 degrees to 40 degrees). Tr. 317.

In March, 2009, Dr. Schenk reported as follows" "The patient was confined to the examining table. He was in obvious great deal of discomfort. Any motion was excruciating painful." Tr. 349.

An MRI of Davern's lumbar spine on March 25, 2009, revealed the following: "Status post fusion from L4 to S1. No evidence of spondylolisthesis. Minor disc bulge at L3-L4 contributing to mild canal stenosis and neural foraminal compromise." Tr. 348.

Once it is determined that a claimant cannot perform his past relevant work as is the case here, the burden shifts to the Commissioner to establish that other jobs exist in sufficient numbers which the claimant can perform. It is clear that Davern had at least one non-exertional limitation: a limitation with respect to forward bending or stooping. Consequently, the Commissioner could not rely on Medial-Vocational Rule 201.21 in this case. Testimony from a vocational expert was required to satisfy the Commissioner's burden.

Our review of the administrative record reveals that the decision of the Commissioner is not supported by substantial evidence. We will, therefore, pursuant to 42 U.S.C. § 405(g) vacate the decision of the Commissioner and remand for further proceedings.

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

MICHAEL DAVERN,

    Plaintiff,

vs.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

No. 4:11-CV-00961

(Judge Kosik)

## ORDER

In accordance with the accompanying memorandum, **IT IS HEREBY ORDERED THAT:**

1. The Clerk of Court shall enter judgment in favor of Michael Davern and against Michael J. Astrue, Commissioner of Social Security, as set forth in the following paragraph.

2. The decision of the Commissioner of Social Security denying Michael Davern social security disability insurance benefits is vacated and the case remanded to the Commissioner of Social Security to:

    2.1 Conduct a new administrative hearing and appropriately evaluate the medical and vocational evidence.

3. The Clerk of Court shall close this case.

_____
Edwin M. Kosik
United States District Judge

Dated: September 7th, 2012